Bob **BULLOCK**, Comptroller, et al., Petitioners,

v.

**HEWLETT–PACKARD COMPANY,**
Respondent.

No. C–657.

Supreme Court of Texas.

Jan. 20, 1982.

Rehearing Denied March 24, 1982.

Mark White, Atty. Gen., Gilbert J. Bernal, Jr., Asst. Atty. Gen., Austin, for petitioners.

Jenkins & Gilchrist, T. Ray Guy, Dallas, for respondent.

GREENHILL, Chief Justice.

This appeal concerns the validity of a rule for using a certain type of tax computation method. Our petitioner, Bob Bullock, the Comptroller of Public Accounts of the State of Texas, promulgated the rule (Rule 026.-02.12.1003,[1] hereinafter "the Rule"). Our

1. 2. Petition for special reporting.
 a. Permission to employ a special reporting method under the provisions of Article 12.02(2) will not be granted unless a written petition therefor is timely filed. The petition may be submitted in letter form, must specify the method of special reporting desired, and should be addressed to the Comptroller of Public Accounts, Capitol Station, Austin, Texas 78774, Attn: Business Tax Division. A petition to employ a special reporting method in the first year franchise tax report must be filed at least fifteen (15) days prior to the due date of the report, and a petition to employ a special method in an annual report must be filed no later than June 1 of the year in which the annual report is due. The postmark (or meter mark in the absence of a post-mark) on the envelope in which the petition is received determines the date of filing. Extensions of time will not be granted for the filing of a petition. A corporation which is granted permission to employ a special reporting method is not required to submit subsequent petitions to employ the identical method in subsequent annual reports. How-

respondent, Hewlett-Packard, failed to comply with the Rule. As a result, the Comptroller denied Hewlett-Packard permission to use a tax computation method which would have saved Hewlett-Packard $68,533.93 in taxes. The taxes were paid under protest.

Hewlett-Packard sued the Comptroller for a refund of that amount. The trial court rendered judgment for the Comptroller. The court of civil appeals reversed that judgment and held the Rule invalid. 619 S.W.2d at 33. We reverse the court of civil appeals judgment and affirm the trial court's judgment. We hold that the Rule is valid.

Hewlett-Packard does business and pays taxes throughout the United States and beyond. In exchange for the privilege of doing business in Texas, Hewlett-Packard must pay a franchise tax. *Bullock v. Ramada Texas, Inc.,* 609 S.W.2d 537 (Tex. 1980). Before 1978, the company computed its taxes by using its gross receipts for a base. The tax computation method involved here uses, as a base figure, an average of the taxpayer's gross receipts, Texas payroll, and Texas property value. This latter method would have reduced Hewlett-Packard's 1978 franchise tax liability by $68,533.93.

According to the Rule, Hewlett-Packard should have filed, by June 1, 1978, a petition requesting permission to use the more favorable tax computation method. That date had passed before Hewlett-Packard's tax department discovered that it could use the more favorable method. Evidence at trial suggested that the Comptroller allows any corporation in Hewlett-Packard's position use of the more favorable method as long as permission is requested by June 1.

This evidence indicates that the Rule is, in effect, just a notice requirement. June 1 is fifteen days prior to the June 15 deadline for reporting corporate franchise taxes. The Comptroller needs to know, prior to that deadline, how many taxpayers need

special treatment. Such knowledge helps the Comptroller plan his and his staff's activities so that he and they can attempt to handle efficiently the avalanche of tax work which falls around any deadline for filing taxes.

 Hewlett-Packard argues that this rationale does not justify the Rule. The company alleges that an administrative rule is invalid if it is merely a matter of administrative convenience.

We disagree. Courts must uphold "legislative" administrative rules if they are reasonable. The rules need not be, in the court's opinion, wise, desirable, or even necessary. 1 K. Davis, Administrative Law Treatise, § 5.05 (1958). Such rules need only be based on some legitimate position by the administrative agency involved. *Day v. United States,* 611 F.2d 1122 (5th Cir. 1980). Moreover, courts will presume that facts exist which justify the rules' promulgation. *Texas Liquor Control Board v. Attic Club, Inc.,* 457 S.W.2d 41 (Tex.1970).

The Rule at issue is a "legislative" administrative rule because it is based on a grant of legislative power. 1 K. Davis, *supra,* at § 5.03. The Texas Legislature granted such power in Article 12.12:

> All reports to the Comptroller of Public Accounts required by this Chapter shall contain such information as the Comptroller of Public Accounts may require. He shall have authority to make and publish rules and regulations not inconsistent with the Constitution or laws of this State or of the United States for the enforcement of this Chapter. . . .[2]

 Hewlett-Packard argues that the Rule is not a valid "legislative" rule because it is inconsistent with Articles 1.045(G), 1.11A(2), 12.02(2), 1.045(A), 1.11(2), and the due process required by the Texas Constitution. We do not agree.

Article 12.02(2) provides that the Comptroller "*may permit*" (emphasis ours) a tax-

---

ever, a new petition is required if a corporation desires to change from one method of special reporting to another special method.

**2.** Statutory references are to Vernon's Texas Civil Statutes Annotated, Taxation, General.

payer to use the tax computation method involved here. The Rule informs the public how the Comptroller will exercise the discretion given him in Article 12.02(2). This seems desirable. If the public had not been so informed, the Comptroller could arbitrarily deny permission to use the method involved, and such action would be practically unreviewable. As discussed above, it appears that any corporation in Hewlett-Packard's position will get to use the method involved if permission is requested on time.

Despite this, Hewlett-Packard argues, and the court of civil appeals held, that the Rule thwarts the Legislature's intent, manifested by Article 12.02(2), to give corporations such as Hewlett-Packard a break on their franchise taxes. We disagree. Undisputed evidence at trial suggested that most corporations in Hewlett-Packard's position have had no problem complying with the Rule.

Hewlett-Packard responds that such evidence proves the Rule is unnecessary. In rejoinder, we reiterate that a "legislative" administrative rule is not invalid simply because it is not, in the court's opinion, necessary. 1 K. Davis, *supra*, at § 5.05. Moreover, if the Rule did not exist, corporations in Hewlett-Packard's position might procrastinate and wait until the last minute to file their returns using the method at issue. This could hamper the Comptroller's efforts to get his work done efficiently.

■ Hewlett-Packard asserts that the Rule is inconsistent with Texas statutes authorizing refunds or credits for overpayment of taxes. *See* Articles 1.045(G), 1.11A, 1.045(A), and 1.11(2). Such statutes limit to seven years (after a tax is due) the time during which a taxpayer may apply for a refund or a credit. The Comptroller does not permit use of the tax computation involved here if permission for such use is not requested on or before June 1, or at least fifteen days before the tax is due. This, Hewlett-Packard believes, effectively "closes the door" to a refund or credit even before a tax is due.

We do not regard this legislation as applicable here. It covers overpayments because

of "mistakes of law" or illegal action. In *Motorola, Inc. v. Bullock*, 586 S.W.2d 706 (Tex.Civ.App.—Austin 1979, no writ), the court had to decide what "mistakes of law" meant in Article 1.11(2). The taxpayer had grounded its refund action on an allegation that the tax collection statute involved was "unlawful, confiscatory, and discriminatory." 586 S.W.2d at 709. This, the court held, was not the kind of "mistake of law" covered in Article 1.11(2).

The same can be said of the present case. Hewlett-Packard grounded its refund action on an allegation that the Rule is invalid. Hewlett-Packard does not allege that it (or the Comptroller) misinterpreted the Rule or that Hewlett-Packard (or the Comptroller) factually misinterpreted Hewlett-Packard's situation. Hewlett-Packard alleges that the Comptroller made a mistake of law in promulgating the Rule. That is not the kind of legal mistake covered by Article 1.11(2). Accordingly, we hold that the Rule is not inconsistent with Article 1.11(2).

■ Likewise, we hold that the Rule is not inconsistent with the statutory provisions authorizing refunds or credits of taxes collected "illegally." Article 1.11A(2). The tax at issue here is authorized by Articles 12.01(1) and 12.02(1). The Rule simply creates a condition for an alternative legal tax. The Rule has no effect on cases in which the taxpayer seeks a refund or credit for an illegally assessed tax.

■ The discussion above responds to Hewlett-Packard's due process argument. "Legislative" administrative rules violate due process when they are arbitrary and capricious. *Gerst v. Oak Cliff Savings and Loan Association*, 432 S.W.2d 702 (Tex. 1968). A rule is arbitrary and capricious when it lacks a legitimate reason to support it. *Id.* Hewlett-Packard itself suggests that the Comptroller had such a reason for the Rule, *i.e.*, administrative convenience.

■ Hewlett-Packard also contends, and the court of civil appeals held, that by denying Hewlett-Packard permission to use the

tax computation involved, the Comptroller penalized Hewlett-Packard simply because the company failed to comply with the Rule. As the $68,533.93 at issue exceeds ten percent of Hewlett-Packard's total franchise tax liability, Hewlett-Packard argues that the alleged penalty violates Article 12.14.

The Comptroller did not *raise* Hewlett-Packard's tax liability because the company did not comply with the Rule. The Comptroller simply refused to *reduce* Hewlett-Packard's liability for such noncompliance. The Comptroller's refusal to grant Hewlett-Packard's tardy application for the more favorable tax is not a "penalty" as that term is used in Article 12.14.

The court of civil appeals judgment is reversed and the trial court's judgment is affirmed.