# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-12-00740-CV

**Michael E. Ware, Appellant**

**v.**

**Texas Commission on Law Enforcement Officer Standards and Education, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT**
**NO. D-1-GN-11-000788, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Michael E. Ware filed a declaratory-judgment suit against the Texas Commission on Law Enforcement Officer Standards and Education ("the Commission") challenging the validity of a Commission rule that renders him permanently ineligible to obtain a law-enforcement license because he had previously been placed on deferred-adjudication community supervision for a felony offense. *See* 37 Tex. Admin. Code § 217.1(a)(4)(A) (2013) (Tex. Comm'n on Law Enforcement Officer Standards & Education, Minimum Standards for Initial Licensure); *see also* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 2008) (Uniform Declaratory Judgments Act); Tex. Gov't Code Ann. § 2001.038 (West 2008) (authorizing declaratory-judgment action to determine validity or applicability of agency rule).[1] On cross-motions for summary judgment, the trial court granted

---

[1] We cite the current version of the Commission's rules for convenience because there have been no intervening amendments that are material to the issues on appeal.

summary judgment in the Commission's favor, concluding that the challenged rule "is valid in all respects." Ware perfected this appeal. We will affirm the trial court's judgment.

## DISCUSSION

In this proceeding, Ware challenges the validity of section 217.1(a)(4)(A) of the Commission's rules. By its express terms, the rule precludes Ware from becoming a licensed law-enforcement officer based on the undisputed fact that he previously pleaded guilty to a felony offense and was placed on deferred adjudication. The challenged rule provides:

> (a) The commission shall issue a [law-enforcement] license to an applicant who meets the following standards:
>
> . . . .
>
> (4) community supervision history:
>
> (A) *has not ever been on court-ordered community supervision or probation for any criminal offense above the grade of Class B misdemeanor* or a Class B misdemeanor within the last ten years from the date of the court order . . . .

37 Tex. Admin. Code § 217.1(a)(4)(A) (emphasis added).

By statute, certain *convictions* automatically preclude an applicant from obtaining a law-enforcement license, including applicants who have been convicted of a felony offense. *See* Tex. Occ. Code Ann. § 1701.312 (West 2012). The term "convicted" means that "a court enter[ed] an adjudication of guilt against the person" under the laws of this state, another state, or the United States. *Id.* The statute requires disqualification of such persons regardless of whether:

2

(1) the sentence is subsequently probated and the person is discharged from community supervision;

(2) the accusation, complaint, information, or indictment against the person is dismissed and the person is released from all penalties and disabilities resulting from the offense; or

(3) the person is pardoned for the offense, unless the pardon is granted expressly for subsequent proof of innocence.

*Id*.

Here, it is undisputed that Ware was successfully discharged from deferred adjudication and was never convicted of the charged offense. Consequently, Ware asserts that the Commission's rule imposes additional burdens, conditions, and restrictions to licensure that exceed and are inconsistent with section 1701.312 of the Commission's enabling act, which expressly prohibits only *convicted* felons from being licensed as law-enforcement officers. *See id*. Ware contends that the enabling statute provides the exclusive grounds on which an applicant may be denied a license based on his prior criminal history and, accordingly, that the Commission was not authorized to enact the additional restrictions contained in rule 217.1(a)(4)(A).

The scope of a validity challenge includes whether the agency had statutory authority to promulgate the rule. *City of Alvin v. Public Util. Comm'n of Tex.*, 143 S.W.3d 872, 878 (Tex. App.—Austin 2004, no pet.). We presume that an agency rule is valid, and the party challenging the rule has the burden of demonstrating its invalidity. *See McCarty v. Texas Parks & Wildlife Dep't*, 919 S.W.2d 853, 854 (Tex. App.—Austin 1996, no writ). An agency's rules must comport with the agency's authorizing statute. *See Office of Pub. Util. Counsel v. Public Util. Comm'n of Tex.*, 131 S.W.3d 314, 321 (Tex. App.—Austin 2004, pet. denied). An agency has only the authority

3

expressly provided by statute or necessarily implied to carry out the express powers the legislature has given it. *See Public Util. Comm'n of Tex. v. City Pub. Serv. Bd.*, 53 S.W.3d 310, 315-16 (Tex. 2001); *Public Util. Comm'n of Tex. v. GTE–Southwest*, 901 S.W.2d 401, 407 (Tex. 1995). To establish a rule's facial invalidity, the challenger must show that the rule (1) contravenes specific statutory language, (2) is counter to the statute's general objectives, or (3) imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. *See id*.

In the present case, Ware challenges the validity of rule 217.1(a)(4)(A) only on the third basis. Thus, the dispute presented turns principally on the construction of the Commission's enabling statute, which is a question of law that we review de novo. *See First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631 (Tex. 2008) (construction of statute is question of law subject to de novo review); *see also Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005) (summary judgment reviewed de novo); *Provident Life & Accident Ins. Co v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003) (prescribing summary-judgment standards of review); *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000) (on cross motions for summary judgment, appellate court must determine all questions presented and preserved and "render the judgment that the trial court should have rendered").

In several provisions of chapter 1701 of the occupations code, the legislature expressly granted the Commission the authority to set the minimum standards for obtaining a law-enforcement license. Section 1701.151, which concerns the Commission's general powers and rule-making authority, grants the Commission the authority to "establish minimum standards relating to

4

competence and reliability, including education, training, physical, mental, and moral standards, for licensing as an officer . . . ." Occ. Code § 1701.151. Sections 1701.251 and 1701.255 further require the Commission to "establish and maintain training programs for officers" and to adopt rules to establish minimum qualifications for a person to enroll in any such training program "that provides instruction in defensive tactics, arrest procedures, firearms, or use of a motor vehicle for law enforcement purposes." *Id.* § 1701.251, .255. In addition, the Commission is required to conduct an examination before issuing a law-enforcement license and to adopt rules that "establish minimum qualifications for a person to be examined." *Id.* § 1701.304. Finally, section 1701.502 specifies that, when a licensed law-enforcement officer is placed on deferred-adjudication community supervision for a felony offense, the license is immediately suspended, and the Commission is expressly imbued with the discretion to enact rules governing reinstatement of the license when the license holder is released from community supervision. *Id.* § 1701.502. As demonstrated by the foregoing provisions, chapter 1701 expressly confers broad regulatory discretion on the Commission to establish eligibility standards. Section 1701.312 limits the Commission's discretion only by specifying a category of applicants that the Commission cannot accept for licensure. Thus, while section 1701.312 does not disqualify an applicant in Ware's position, it does not limit the Commission's discretion to adopt qualification standards that do.[2]

---

[2] Our conclusion is further buttressed by a comparison of the provisions in chapter 1701 to the provisions in chapter 53 of the occupations code. Chapter 53 governs the "consequences of criminal conviction" on occupational licenses in general. *See* Tex. Occ. Code Ann. §§ 53.001-.105 (West 2012). Pertinent to the issues in the present case, section 53.021(c) expressly *prohibits* a licensing authority from considering a person to have been "convicted of an offense" for purposes of disqualifying that person from receiving a license or taking a licensing examination based on a successfully discharged deferred adjudication. *Id.* § 53.021(c). What is notable about section 53.021

5

We conclude that (1) the legislature expressly authorized the Commission to promulgate rules of eligibility regarding licensing of law-enforcement officers, and (2) rule 217.1(a)(4)(A) is not contrary to or inconsistent with the Commission's enabling statute.

## CONCLUSION

For the reasons stated, we affirm the trial court's summary judgment.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Field

Affirmed

Filed: May 16, 2013

---

is that (1) chapter 1701 is expressly *exempted* from chapter 53's application, (2) law-enforcement licenses are expressly exempted from section 53.021(c), and (3) no similar restriction regarding deferred adjudications is included in chapter 1701. *See id.* §§ 53.002(2), .021(e)(1).