JUNG KIM, Plaintiff-Appellant, v. MERCEDES-BENZ, U.S.A., INC., Defendant-Appellee.

First District (4th Division) No. 1—03—1270

Opinion filed October 21, 2004.

445

Krohn & Moss, Ltd., of Chicago (Scott M. Cohen, of counsel), for appellant.

Barnes & Thornburg, of Chicago (Bradley B. Falkof and Charla L. Hausler, of counsel), for appellee.

JUSTICE QUINN delivered the opinion of the court:
Plaintiff, Jung Kim, brought this breach of warranty action against

defendant, Mercedes-Benz, USA, Inc. (Mercedes-Benz), to revoke acceptance of a 1999 model-year Mercedes-Benz ML 320 (ML 320) sport-utility vehicle that he purchased from a dealership on October 29, 1998. The circuit court granted defendant's directed verdict motion, from which judgment plaintiff appeals.

## BACKGROUND

Plaintiff purchased the subject ML 320 from Mark Motors, Inc., a Mercedes-Benz dealership, for an amount totaling $45,327. Defendant's written "Basic Warranty" for the ML 320 provided coverage for either a 4-year period or 50,000 miles of service, in which the dealer would "repair any defective parts in accordance with the terms of such warranties within the stated limits." Defendant's limited warranty states:

"Mercedes-Benz of North America, Inc. (MBNA) warrants to the original and each subsequent owner of a new Mercedes-Benz truck that any authorized Mercedes-Benz truck dealer will make any repairs or replacements necessary, to correct defects in material or workmanship. This warranty includes any accessory or equipment thereon manufactured or supplied by Daimler-Benz A.G., Mercedes-Benz U.S. International, Inc. (MBUSI), Mercedes-Benz Services International, Inc. (MBSI), or MBNA."

Defendant's warranty documents also provide that "[t]he implied warranties of merchantability and fitness for a particular purpose are limited to 48 months or 50,000 miles from the date of initial operation, whichever event shall first occur."

On October 11, 2000, plaintiff filed a three-count complaint in which he alleged that, as a result of the ineffective repair attempts made by defendant and Mark Motors, the ML 320 could not be utilized for personal, family and household use as intended by plaintiff at the time of acquisition. Plaintiff alleged that, after he took possession of the vehicle on December 18, 1998, he began to experience various defects that substantially impaired the use, value and/or safety of the ML 320. Specifically, plaintiff averred that Mark Motors and/or an authorized Mercedes-Benz service dealer failed on five attempts to repair a fuel gauge that did not register the correct amount of gas in the vehicle's fuel tank. According to plaintiff, these defects and others violated the implied warranty of merchantability and the express written warranties issued by defendant for the ML 320, as alleged in counts I and II of the complaint. Plaintiff alleged revocation of the acceptance of the ML 320 in count III.

On December 22, 2000, plaintiff responded to defendant's opinion witness interrogatories, in which he stated, "[p]llaintiff has not yet retained the services of an opinion witness, but reserves the right to

do so in the future." On January 16, 2001, plaintiff answered defendant's first set of interrogatories, wherein he did not list himself as a fact or opinion witness.[1] A July 10, 2001, letter addressed to defense counsel from plaintiff's attorney stated that "Plaintiff will testify at arbitration and/or trial about the matters alleged in Plaintiff's complaint and all documents produced to Defendant by Plaintiff during the course of discovery."

At the commencement of trial on April 28, 2003, defendant moved *in limine* to bar plaintiff from calling any fact or opinion witness not properly disclosed pursuant to Supreme Court Rule 213 (177 Ill. 2d R. 213). Defendant argued that it would be prejudiced severely if plaintiff were allowed to present undisclosed fact or opinion witness testimony because defendant did not have an opportunity to respond to the testimony of any witnesses other than those properly disclosed by plaintiff. The circuit court granted defendant's motion *in limine* without objection.

Plaintiff testified on direct examination at trial that, prior to purchasing the vehicle, he test-drove it and noticed no problems. Plaintiff bought the ML 320 because, at that time, it was being advertised heavily as an excellent vehicle and Mercedes-Benz had the best reputation as an automobile manufacturer.

Plaintiff testified that Mrs. Kim was the primary driver of the ML 320 and that she utilized the vehicle to commute to work, driving 100 miles per day. Although plaintiff did not remember the exact date problems began to occur, he stated that four to five months after he purchased the ML 320, Mrs. Kim informed him that when she filled up the vehicle's fuel tank, the fuel gauge would not register the correct amount of fuel. Plaintiff noticed that the fuel gauge did not move after it reached the one-quarter gauge mark, even though the vehicle was filled completely with fuel. Plaintiff took the ML 320 to Mark Motors to fix the problem, but it reoccurred several months later. Plaintiff testified that he experienced the problem five or six times.

Plaintiff also described additional problems regarding different parts of the vehicle that required repair. He stated that, during the winter, the window would not roll up and that there was excess noise from the shifter. The window was out of order three times, the seat belt malfunctioned and the electric charger was not working. Plaintiff stated that either he or his wife brought the vehicle to Mark Motors

---

[1]Plaintiff's answer to defendant's interrogatories listed a "Jung H. Kim," to testify at trial; however, plaintiff's answer indicated that "Jung H. Kim" referred to plaintiff's spouse (Mrs. Kim). The record shows that plaintiff's full name is Jung Kil Kim.

for routine maintenance, such as oil changes, and that he bought the highest grade-level fuel.

Previously, plaintiff purchased three new cars and two used cars from dealerships. Before buying the cars, plaintiff researched prices to determine a fair price. Plaintiff's counsel then inquired, "[B]ased upon the problems you've experienced with the ML-320, what would you have agreed to pay for this vehicle had you known the problems?" Defense counsel objected to this line of questioning, upon which a sidebar was held outside the presence of the jury.

Defense counsel argued that plaintiff "at no time during the course of discovery disclosed that [he] would be providing valuation testimony to this court or to this jury" and that the valuation testimony amounted to an opinion. Defense counsel reminded the circuit court that it granted a motion *in limine* to exclude evidence of damages not disclosed. Defense counsel also asserted that plaintiff failed to lay a proper foundation that would allow him to testify "that this vehicle at the time he bought it back in 1998 had a value of X dollars." Defense counsel noted there was no evidence to show that, based upon the fact plaintiff tried to obtain a discount when he purchased the vehicle, he could testify that the vehicle was worth less than what he paid for it.

Plaintiff's attorney responded that Illinois authority supports that an owner of a product is competent to testify about the diminished value of a vehicle pursuant to the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act (15 U.S.C. § 2301 *et seq.* (2000)). Plaintiff's attorney further argued that "the new Rule 213 was much more lenient" and that "[w]e have disclosed that [plaintiff] will be testifying about all of the problems and the defects and, et cetera, with the vehicle." Plaintiff's attorney also stated that plaintiff was not tendered as an expert, but that he was disclosed as testifying regarding any matters as alleged in his complaint.

The circuit court sustained defendant's objection, finding that no foundation was laid demonstrating plaintiff was a competent witness to testify as to the diminished value of the vehicle and that plaintiff's testimony had not been disclosed. The court stated that plaintiff could testify as to "what his state of mind was or what his feelings were in terms of what it is that he would pay for the vehicle," which was separate from testifying as to the value of the vehicle. The court also questioned plaintiff's attorney regarding the relevancy of plaintiff's testimony with respect to what plaintiff would have paid for the vehicle. Plaintiff's attorney responded that "we have to show that [plaintiff], because of the defects and because of the problems he had, he would have paid less for the vehicle. If he's going to testify he would have paid less for the vehicle, that's right on point." The court again sustained defendant's objection.

Plaintiff also testified regarding his claim for aggravation and inconvenience. He explained that, after buying the best-rated car in the world and paying so much money, he kept experiencing numerous problems. He stated that his family could no longer depend on the vehicle and that he could not drive the vehicle to Florida or New York with his family, as he had planned.

On cross-examination, plaintiff testified that each time he tendered the vehicle for repairs, Mark Motors provided him with a loaner vehicle free of charge. Plaintiff clarified that the fuel gauge reflected fuel filled to three quarters of a tank rather than one quarter. After plaintiff filed his complaint, he never brought the vehicle to the dealership for repairs to the fuel gauge. Plaintiff testified that, at the time of trial, the ML 320 had been driven 90,000 miles and that he and his wife continued to drive the vehicle.

Following plaintiff's testimony, plaintiff moved for mistrial, based on the circuit court's refusal to allow him to testify "as to the value of the vehicle or the diminished value of the vehicle" pursuant to Illinois authority establishing that an expert is not required to prove diminished value and that the owner of a product is competent to testify on that subject. The court denied plaintiff's motion, finding that there was no foundation laid. Plaintiff's attorney then acknowledged that, based upon the court's ruling, plaintiff was precluded from proving the damages element in this case. The court responded that plaintiff's counsel could recall plaintiff and lay a foundation as to his qualifications to testify as to the value of the vehicle, to which plaintiff's counsel replied, "we have no other foundation to lay other than [plaintiff's] familiarity with the value of vehicles based on his experience in purchasing vehicles."

Plaintiff was recalled to testify regarding certain exhibits demonstrating Mark Motors' repair work on the ML 320. A March 16, 1999, invoice showed that, at 4,860 miles, a nick on the left rear door was repaired and the vehicle was inspected for brake vibration or noise. Plaintiff clarified that the nick on the door was not an actual problem that he experienced with the vehicle. On June 15, 1999, Mark Motors replaced a fuse for an auxiliary light. A July 15, 1999, invoice showed that, at 12,579 miles, the fuel gauge did not function and a rattling noise emitted from the shifter when idling the vehicle. On August 11, 1999, Mark Motors replaced the transmission shifter. An August 18, 1999, invoice reflected that the right rear taillight was not as bright as the left rear taillight. The invoice also noted that the fuel gauge did not function correctly, which Mark Motors corrected by replacing the fuel level sensor. Plaintiff brought the ML 320 to Mark Motors on February 8, 2000, because the seat belts were not staking

properly and the battery light was illuminated. On March 21, 2000, at 28,498 miles, a switch failure occurred in the driver's side window, the left rear door pillar post cover was peeling and the right seat belt needed to be replaced. Mark Motors again replaced the fuel level sensor on March 31, 2000, and repaired peeling and bubbling in the adhesive trim on both rear doors. Finally, on April 19, 2000, to repair bubbles in the vinyl inset of the left rear door B pillar cover, Mark Motors replaced a decal and removed the bubbles. In each of the above-described repairs, plaintiff was not charged any costs because the alleged defects were covered by the warranty and, on four occasions, Mrs. Kim was provided with alternate transportation free of charge. Plaintiff testified that, although he did not remember the last repair date, the fuel gauge problem was fixed and did not recur.

The following colloquy then ensued between plaintiff and his attorney:

"Q. Now, you testified yesterday, sir, that you had not—you would not have purchased the vehicle had you known of the problems; correct?

A. Correct.

Q. That being said, sir, based upon the problems that you have discussed today and the problems that your wife discussed today, along with your testimony yesterday in regard to the vehicles you purchased in the past, what would you have agreed to pay for this vehicle had you known of the problems on the date of purchase?"

Defense counsel objected to this line of questioning and a sidebar followed. The circuit court questioned plaintiff's attorney regarding the relevancy of the witness's state of mind and the subjective nature of plaintiff's testimony as to what he would have paid for the vehicle. Plaintiff's attorney responded, "[w]e believe that [it] is relevant for the diminished value or at least the value of the vehicle as a result of the problems he experienced." Plaintiff's counsel admitted, however, that plaintiff did not understand what diminished value meant. The court then noted no foundation was laid as to this testimony and stated, "as to the relevancy, I don't see the relevancy of that particular question." The court sustained defendant's objection.

Following plaintiff's testimony, defendant moved for a directed verdict, arguing that plaintiff failed to establish the existence of a defect in the vehicle and damages as a result of any breach of warranty. According to defendant, plaintiff presented no evidence of the value of the vehicle as warranted or the value of the vehicle on the date of the breach. In addition, defendant asserted that there was no evidence of incidental or consequential damages.

Plaintiff responded that circumstantial evidence established that

the ML 320 was defective. Plaintiff also argued that the circuit court erred by precluding him from testifying as to the diminished value of the vehicle, which prevented him from proving the damages element. Further, plaintiff averred that a proper foundation for his damages testimony was laid because "he is somewhat familiar with the value of vehicles."

The circuit court granted defendant's directed verdict motion, finding that plaintiff had failed to establish damages in his breach of warranty and revocation of acceptance claims. Plaintiff appeals the court's decision to grant defendant's directed motion verdict as to his breach of warranty claims; however, he does not challenge the court's findings with respect to his revocation of acceptance claim.

## ANALYSIS

Prior to considering the merits of the instant case, this court must first address defendant's argument that plaintiff waived his right to appellate review. Defendant asserts that plaintiff's counsel failed to make an offer of proof regarding the diminished value of the vehicle. Plaintiff responds that he was not required to make a specific offer of proof because the nature and substance of the evidence was obvious.

■ "A party claiming he has not been given the opportunity to prove his case must provide a reviewing court with an adequate offer of proof as to what the excluded evidence would have been." *In re Estate of Romanowski*, 329 Ill. App. 3d 769, 773, 771 N.E.2d 966 (2002). An adequate offer of proof apprises the circuit court of what the offered evidence is or what the expected testimony will be, by whom it will be presented and its purpose. *Romanowski*, 329 Ill. App. 3d at 773. Pertinent to this case, the purpose of an offer of proof is to disclose to the circuit court and opposing counsel the nature of the offered evidence and to enable a reviewing court to determine whether the exclusion of the evidence was proper. *Turgeon v. Commonwealth Edison Co.*, 258 Ill. App. 3d 234, 241, 630 N.E.2d 1318 (1994); see also *People v. Andrews*, 146 Ill. 2d 413, 421, 588 N.E.2d 1126 (1992).

Our supreme court has set forth the basic principles regarding the adequacy of offers of proof, stating:

"An offer of proof that merely summarizes the witness' testimony in a conclusory manner is inadequate. [Citation.] Neither will the unsupported speculation of counsel as to what the witness would say suffice. [Citation.] Rather, in making the offer of proof, counsel must explicitly state what the excluded testimony would reveal and may not merely allude to what might be divulged by the testimony. [Citation.] The offer serves no purpose if it does not demonstrate, both to the [circuit] court and to reviewing courts, the admissibility of the testimony which was foreclosed by the sustained objection." *Andrews*, 146 Ill. 2d at 421.

The failure to make an offer of proof results in a waiver of review of whether the evidence was excluded improperly. *Romanowski*, 329 Ill. App. 3d at 773.

■ Here, the record shows that plaintiff's counsel twice attempted to question plaintiff regarding the amount he would have paid for the vehicle at the time he originally purchased it, considering the number of repairs that were made afterward. The record also shows that plaintiff's counsel consistently pursued this line of questioning for the purpose of establishing the diminished value of the ML 320. Significantly, however, other than claiming that he was going to proffer evidence of the diminished value of the vehicle, plaintiff's counsel never actually proffered any evidence of the diminished value of the vehicle. Plaintiff's counsel never explicitly stated what the excluded testimony would reveal. In fact, the record clearly establishes that plaintiff had absolutely no understanding of the concept of diminished value. Therefore, despite plaintiff's claims to the contrary, it is neither clear nor obvious from the record what plaintiff would have answered, what the basis for his answer would have been or what purpose his answer would have served. See *Moore v. Swoboda*, 213 Ill. App. 3d 217, 237-38, 571 N.E.2d 1056 (1991). Further, plaintiff's reliance upon *Wright v. Stokes*, 167 Ill. App. 3d 887, 891, 522 N.E.2d (1988), in support of his argument that a formal offer of proof is unnecessary due to the obvious nature and substance of the proposed testimony is misplaced in light of the supreme court's more recent guidelines for offers of proof, as delineated in *Andrews*, and where, as here, both the circuit court and opposing counsel disputed plaintiff's counsel's remarks. Accordingly, plaintiff has waived his challenge to the exclusion of his proposed testimony.

Notwithstanding waiver, defendant argues that the circuit court properly excluded plaintiff's testimony as to what he would have agreed to pay for the vehicle had he known of the problems prior to purchasing it because plaintiff failed to: (1) disclose himself as a witness who would testify as to damages or the value of the vehicle in its allegedly defective state; (2) lay a foundation for the diminished value of the vehicle; and (3) show the relevance of the proposed testimony.

■ The exclusion or admission of evidence by the circuit court is reviewed under an abuse of discretion standard and will not be reversed absent an abuse of that discretion. *Gill v. Foster*, 157 Ill. 2d 304, 312-13, 626 N.E.2d 190 (1993); *Allied Asphalt Paving Co. v. Village of Hillside*, 314 Ill. App. 3d 138, 148, 731 N.E.2d 425 (2000). An abuse of discretion may be found only where no reasonable man would take the view adopted by the circuit court. *Smith v. Silver Cross Hospital*, 339 Ill. App. 3d 67, 74, 790 N.E.2d 77 (2003).

A

Defendant first asserts that plaintiff was not disclosed properly as a lay opinion witness on the issue of the diminished value of the vehicle. Defendant argues that, as a result, plaintiff's proposed testimony was excluded properly. Defendant also notes that plaintiff failed to object to the circuit court's ruling on the motion *in limine* barring testimony from witnesses not properly disclosed and, therefore, plaintiff waived argument on this issue.

Plaintiff responds that he was disclosed properly as a witness under Rule 213, noting the July 10, 2001, letter addressed to defense counsel, which stated that plaintiff would testify at trial "about the matters alleged in [p]laintiff's complaint." Plaintiff maintains that he put defendant on notice by identifying himself as a witness and including the subject matter of his expected testimony.

■ The newly amended version of Supreme Court Rule 213(f) defines a "lay witness" as "a person giving only fact or lay opinion testimony." 210 Ill. 2d R. 213(f). Rule 213(f) also states, "[f]or each lay witness, the party must identify the subjects on which the witness will testify. An answer is sufficient if it gives reasonable notice of the testimony, taking into account the limitations on the party's knowledge of the facts known by and opinions held by the witness."[2] 210 Ill. 2d R. 213(f). The committee comments for Rule 213(f) note that a lay witness, for example, includes a person such as an eyewitness to a car accident. According to the committee comments, an answer to a written interrogatory "must describe the subjects sufficiently to give 'reasonable notice' of the testimony, enabling the opposing attorney to decide whether to depose the witness, and on what topics." 210 Ill. 2d R. 213(f), Committee Comments. The committee comments also state that an interrogatory answer would not be proper if it said only that the witness will testify about "the accident." 210 Ill. 2d R. 213(f). Committee Comments.

■ "Illinois Supreme Court rules on discovery are *mandatory* rules of procedure subject to strict compliance by the parties." (Emphasis in original.) *Clayton v. County of Cook*, 346 Ill. App. 3d 367, 377, 805 N.E.2d 222, 232 (2004). A party has a duty to supplement seasonably or amend prior answers or responses whenever new or additional

---

[2]Formerly, Rule 213 did not distinguish between expert and lay opinion witnesses and required that, "upon written interrogatories, a party must state the subject matter to be testified to, the conclusions, opinions and qualifications of opinion witnesses, and provide all reports of opinion witnesses." 177 Ill. 2d R. 213(g), Committee Comments, at xxxi.

454

information becomes known to that party. 177 Ill. 2d R. 213(i). To allow either side to ignore the plain language of Rule 213 defeats its purpose and encourages tactical gamesmanship. *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 109-10, 806 N.E.2d 645 (2004), citing *Department of Transportation v. Crull*, 294 Ill. App. 3d 531, 537, 690 N.E.2d 143 (1998).

Here, plaintiff seasonably supplemented additional information by notifying defendant in the July 10, 2001, letter that he would testify at trial regarding the matters set forth in his complaint. Plaintiff's complaint states that he experienced various alleged defects that "impair[ed] the use, value and/or safety of the ML 320." Plaintiff prayed for judgment against defendant for diminution of the value of the vehicle.

Although detailed disclosure for lay witnesses is no longer required under the newly amended version of Rule 213, plaintiff's notice that he would testify as to matters set forth in his complaint is a generalized statement akin to the committee comments' example noting that merely testifying about an "accident" is improper disclosure. The committee comments to Rule 213(f) state that the purpose of this rule is "to prevent unfair surprise at trial, without creating an undue burden on the parties before trial." 210 Ill. 2d R. 213(f), Committee Comments.

■ Here, regardless of the complaint's numerous allegations of the diminished value of the vehicle, plaintiff's generalized statement as to his proposed testimony created unfair surprise with respect to the attempt to introduce testimony as to the diminished value of the ML 320. To allow plaintiff to disclose that he would testify as to matters set forth in the complaint would create an undue burden on defendant, especially given the limitation on plaintiff's personal knowledge upon which he was to rely for his proposed opinion regarding what he would have paid for the vehicle based on the alleged defects. 210 Ill. 2d R. 213(f). A more detailed disclosure describing the specific nature of plaintiff's testimony would have allowed defense counsel to decide whether to depose plaintiff or whether to provide an opposing expert witness on the issue of diminished value.

Because plaintiff provided only a generalized statement describing his lay witness testimony, he failed to provide reasonable notice of the proposed testimony and, therefore, was not disclosed properly pursuant to Rule 213(f). Accordingly, the circuit court did not abuse its discretion and the proposed testimony was excluded properly.

Although any one of the holdings in this opinion disposes of the

matter, the parties have informed this court that there is a need for guidance on each of the remaining issues (*People v. Williams*, 204 Ill. 2d 191, 206, 788 N.E.2d 1126 (2003), citing *Cates v. Cates*, 156 Ill. 2d 76, 80, 619 N.E.2d 715 (1993) ("[j]udicial *dicta* have the force of a determination by a reviewing court and should receive dispositive weight in an inferior court")) and, therefore, we address them here.

## B

■ Defendant next contends that plaintiff's trial testimony was insufficient to lay a foundation for the diminished value of the ML 320. According to defendant, plaintiff was incapable of laying a foundation because, as above-noted, the record demonstrates that plaintiff did not understand the concept of diminished value. Defendant argues that plaintiff's knowledge of the value of vehicles that he previously bought during his lifetime does not provide support that he was familiar with the value of a 1999 model-year Mercedes-Benz ML 320. Defendant further contends that no foundation was laid for the value of the vehicle in its allegedly defective state.

Plaintiff, citing an Indiana Court of Appeals decision, *Coyle Chevrolet Co. v. Carrier*, 397 N.E.2d 1283 (Ind. App. 1979), responds that his foundation mirrored that of the plaintiff in *Coyle*.

Although Indiana authority provides that the owner of personal property is competent to testify as to its value (*Coyle*, 397 N.E.2d at 1287), case law from a foreign jurisdiction does not have binding authority on this court. *Mount Vernon Fire Insurance Co. v. Heaven's Little Hands Day Care*, 343 Ill. App. 3d 309, 320, 795 N.E.2d 1034 (2003); *Soumpholphakdy v. Prudential Property & Casualty Insurance*, 188 Ill. App. 3d 602, 603, 544 N.E.2d 1107 (1989).

Illinois authority does allow damage claims based on the alleged diminished value of a product. See *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 675 N.E.2d 584 (1996); *Perona v. Volkswagen of America, Inc.*, 292 Ill. App. 3d 59, 684 N.E.2d 859 (1997); *Verb v. Motorola, Inc.*, 284 Ill. App. 3d 460, 471-72, 672 N.E.2d 1287 (1996). Pertinent here, "a lay witness may give an opinion as to the value of personal property only if he has sufficient personal knowledge of the property and its value." *Wausau Insurance Co. v. All Chicagoland Moving & Storage Co.*, 333 Ill. App. 3d 1116, 1128, 777 N.E.2d 1062 (2002). The valuation opinion of a lay witness will be admitted only upon an adequate showing of the factors on which he bases his testimony. *Wausau*, 333 Ill. App. 3d at 1128; *State Farm Insurance Co. v. Best in the West Foods, Inc.*, 282 Ill. App. 3d 470, 483, 667 N.E.2d 1340 (1996).

Although the court in *Wausau* noted that an adequate showing of factors is required to lay a proper foundation for the valuation opinion of a lay witness, Illinois authority does not provide guidelines for the appropriate factors necessary to establish a proper foundation. In *Wausau*, the plaintiff, an insurance company, initiated a subrogation action against the defendant moving company, alleging that it dropped and damaged an electron microscope owned by the McCrone Group, Inc. (McCrone), and insured by the plaintiff. In order to establish damages, the plaintiff submitted the affidavit of its claims adjuster, who stated that she had no personal knowledge of how her company determined the value of the microscope, and answers to inter-rogatories, in which the president of McCrone valued the microscope by conferring with the manufacturer. The circuit court granted sum-mary judgment in favor of the plaintiff and awarded damages. On ap-peal, the defendant argued that the plaintiff failed to prove damages. The *Wausau* court reversed the damage award, finding that the plaintiff failed to provide deposition testimony or an affidavit from any of the manufacturer's employees who had personal knowledge of the value of the microscope before and after the accident. *Wausau*, 333 Ill. App. 3d at 1128.

In *Behrens v. W.S. Bills & Sons, Inc.*, 5 Ill. App. 3d 567, 570, 283 N.E.2d 1 (1972), the plaintiffs filed an action for damages which were sustained when a building on the property leased by the plaintiffs col-lapsed as a result of an excavation made on adjoining property by the defendants. Plaintiff Frank Behrens testified as to the value of fixtures and merchandise lost in the building collapse and bolstered his opinion by applying a value equal to a value extracted from a commercial fixture catalog. The circuit court entered a judgment in favor of the plaintiffs following a jury determination of the amount of damages. On appeal, the defendants asserted that the plaintiffs' use of an unidentified catalog as a basis for Behrens' opinion of the precollapse value of the fixtures was an improper foundation for a valuation opinion. The *Behrens* court noted that there was no specific objection to the hearsay nature of the catalog, which precluded the court from determining whether the catalog prices incorrectly formed the basis of Behrens' opinion. Nevertheless, the reviewing court found that Behrens' opinion was admissible because "a plaintiff could be allowed to establish familiarity with furniture on the basis of a knowledge of prevailing prices of such items based on shopping with friends, window shopping, noticing newspaper advertisements and hearing radio advertisements." *Behrens*, 5 Ill. App. 3d at 577.

To establish an appropriate foundation as to the value of personal property, the lay witness, at a minimum, should be able to testify as to

the following factors: (1) familiarity with the property in question; (2) actual knowledge of the value of the subject property; and (3) the basis of the knowledge of that value, *i.e.*, how, when and where the witness obtained the knowledge. If the lay witness is able to testify to these three factors, the circuit court will be in a much better position to exercise its discretion as to whether or not to admit the testimony.[3]

Under the facts of the instant case, it really does not matter whether we apply the liberal standard of admissibility as explained in *Behrens* or the restrictive standard of admissibility as discussed in *Wausau*. Although plaintiff demonstrated personal knowledge of the value of the vehicle as new, he nevertheless failed to provide any testimony or other evidence demonstrating personal knowledge of the value of the ML 320 in its allegedly defective state. Further, plaintiff failed to establish the basis of his knowledge. Accordingly, plaintiff has not made an adequate showing of the factors on which he bases his proposed testimony for the diminished value of the ML 320. No proper foundation was laid as to the diminished value of plaintiff's vehicle, and, therefore, plaintiff's proposed testimony was excluded properly.

## C

■ In his petition for rehearing, plaintiff asserts that the recent decision of the third division of the First District of the Appellate Court of Illinois in *Razor v. Hyundai Motor America*, 349 Ill. App. 3d 651 (2004), supports his argument that the circuit court in the instant case erred in granting defendant's motion for directed verdict.

In *Razor*, the plaintiff testified that her new car failed to start numerous times, requiring it to be repaired by the auto dealership on five occasions in the first 3½ months she owned it. On three of those occasions, the car had to be towed to the dealership, where it remained for some 40 days, during much of which plaintiff used a loaner. *Razor*, 349 Ill. App. 3d at 655-57. Plaintiff, who was the sole witness in her

---

[3]We note that the Texas Motor Vehicle Commission Code (Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 6.07(c) (West Supp. 1993)) (Texas Code) provides a statutory formula for assessing the repurchase price of a vehicle that fails to conform to the manufacturer's express warranties due to a defect that the manufacturer has been unable to repair and that "substantially impairs" the use or market value of the car. See *Chrysler Motors Corp. v. Texas Motor Vehicle Comm'n*, 846 S.W.2d 139, 140-41 (Tex. Ct. App. 1993). "The repurchase price is the purchase price of the vehicle less a 'reasonable allowance' for the owner's use of the vehicle." *Chrysler Motors*, 846 S.W.2d at 141. The Texas Code defines a reasonable allowance for use as the "amount directly attributable to use of the motor vehicle when the vehicle is not out of service for repair." *Chrysler Motors*, 846 S.W.2d at 142.

case, testified as to the price she paid for the vehicle and that the value of the car she received was less than the value of the car she thought she was buying. She testified that she would not have bought the car or paid the price that she did if she had known at the time of purchase what she knew at trial. She also testified that she missed work and that she suffered inconvenience and aggravation as a result of the car's failure to start. *Razor*, 349 Ill. App. 3d at 657. The jury found for plaintiff and awarded her damages for breach of the limited and implied warranties, loss of use and for aggravation and inconvenience.

The defendant argued on appeal that the circuit court erred in not granting its motion for judgment notwithstanding the verdict because the "plaintiff failed to prove damages, an essential element of her *prima facie* case." *Razor*, 349 Ill. App. 3d at 654. In rejecting this argument, the third division held:

> "Mathematical precision is not required in proof of loss, especially in the determination of consequential damages. *McGrady v. Chrysler Motors Corp.*, 46 Ill. App. 3d 136, 139-40, 360 N.E.2d 818, 821 (1977). Rather, the amount of damages is determined by the trier of fact in the exercise of sound discretion and in any manner reasonable under the circumstances, as long as the award is not punitive. *McGrady*, 46 Ill. App. 3d at 139-40, 360 N.E.2d at 821. 'Where the right to recovery exists[,] the defendant cannot escape liability because the damages are difficult to prove.' *Burrus v. Itek Corp.*, 46 Ill. App. 3d 350, 357, 360 N.E.2d 1168, 1172 (1977). Here, the court properly instructed the jury that plaintiff had to prove that she sustained damages as a proximate cause of defendant's breach and that the jury need not be mathematically precise in its damages determination and could use a 'reasonable basis for damages.' Based on its own experience and plaintiff's testimony, the jury could reasonably determine the difference between the value of the car as promised (a problem-free, reliable car capable of being driven at will) and the value of the car as plaintiff actually received it (an unreliable car, prone to not starting and, on such occasions, incapable of being driven), as well as incidental and consequential damages. We do not find 'a total failure or lack of evidence to prove' the damages element necessary to the plaintiff's case such that judgment *n.o.v.* was warranted." *Razor*, 349 Ill. App. 3d at 660.

In his petition for rehearing, plaintiff argues that the testimony allowed into evidence by the circuit court in the instant case would be sufficient under *Razor* for a jury to determine the diminished value of the Mercedes. In making this argument, plaintiff points out the similarities between his testimony and the testimony of the plaintiff in

*Razor*—*i.e.*, the purchase price of the vehicle, the number of times the car was taken in for repair, and the fact that neither plaintiff would have purchased the car had he or she known the problems he or she would experience. Plaintiff asserts that, like the plaintiff in *Razor*, he testified the value of the car he received was less than the value he thought he was buying. In support of this assertion, plaintiff points to his testimony: "I purchased a new vehicle expecting there would not be any problems, and I paid a lot of money to buy a good car. If I had known there would be so much [*sic*] problems, I would have bought a cheap car." This testimony is simply not the same as Razor's testimony that "[s]he would not pay the price she paid because the problems she had with the new Sonata were akin to those she had with her previous car, which had been used and from which she had expected some problems. Plaintiff testified that 'I would not pay that for a new car with used problems as it were.' " *Razor*, 349 Ill. App. 3d at 657.

In his petition for rehearing, plaintiff avers, "For purposes of this argument, plaintiff will focus only on the testimony allowed by the trial court and not the testimony that plaintiff argued was wrongfully excluded." It is clear, however, that plaintiff is really arguing that the circuit court in the instant case was wrong for sustaining defendant's objection to plaintiff's question on direct examination, "[W]hat would you have agreed to pay for this vehicle had you known of the problems on the date of purchase?" As explained in this opinion, plaintiff's testimony regarding diminished value was properly excluded as being violative of Supreme Court Rule 213(f) (210 Ill. 2d R. 213(f)). As also previously explained, plaintiff waived our review of the exclusion of the testimony because no offer of proof was made in the circuit court.

Plaintiff asserts that *Razor*'s holding "recognized that a jury may determine the diminished value of a product based solely on the plaintiff's testimony and based on the defects in the automobile without laying any more particular foundation." We disagree.

The *Razor* opinion did not discuss in any manner or form the foundational requirements that must be considered when determining the admissibility of a vehicle owner's testimony relating to diminished value. Unlike the court in *Razor*, we were asked by the parties in this case to address this issue and nothing in our reading of *Razor* changes our analysis.

## D

The foregoing conclusions are dispositive of the outcome of this case because they each result in the exclusion of plaintiff's only attempt to proffer evidence of damages to establish a *prima facie* case for his breach of warranty claims.

A directed verdict is appropriate where the plaintiff has failed to establish a *prima facie* case. *Saxton v. Toole*, 240 Ill. App. 3d 204, 210, 608 N.E.2d 233 (1992). A directed verdict is granted improperly where "there is any evidence, together with reasonable inferences to be drawn therefrom, demonstrating a substantial factual dispute, or where the assessment of credibility of the witnesses or the determination regarding conflicting evidence is decisive to the outcome." *Maple v. Gustafson*, 151 Ill. 2d 445, 454, 603 N.E.2d 508 (1992). The grant or denial of a motion for directed verdict is reviewed *de novo*. *Susnis v. Radfar*, 317 Ill. App. 3d 817, 825, 739 N.E.2d 960 (2000). Although there is contrary authority in Illinois as to the appropriate standard of review (see *NWI International, Inc. v. Edgewood Bank*, 291 Ill. App. 3d 247, 261, 684 N.E.2d 401 (1997); *Cohan v. Garretson*, 282 Ill. App. 3d 248, 256, 667 N.E.2d 1325 (1996); *Johnson v. National Super Markets, Inc.*, 257 Ill. App. 3d 1011, 1015, 630 N.E.2d 934 (1994); *Boatmen's Bank of Mt. Vernon v. Dowell*, 208 Ill. App. 3d 994, 1001, 567 N.E.2d 739 (1991)), nevertheless, *de novo* review is proper because the evidence presented at trial must be considered " ' "[a]new; afresh; a *second time*." ' " (Emphasis in original.) *Susnis*, 317 Ill. App. 3d at 826, quoting *City of Mattoon v. Mentzer*, 282 Ill. App. 3d 628, 633, 668 N.E.2d 601 (1996), quoting Black's Law Dictionary 435 (6th ed. 1990).

"Damages are an element of a breach of warranty claim. Without damages, there can be no recovery ***." *Valenti v. Mitsubishi Motor Sales of America, Inc.*, 332 Ill. App. 3d 969, 973, 773 N.E.2d 1199 (2002).

As noted above, plaintiff's proposed testimony properly was excluded and no abuse of discretion by the circuit court was shown. Plaintiff has failed to provide any evidence of damages. Plaintiff nevertheless argues that the repair records alone are sufficient for the jury to determine the diminished value. Plaintiff relies upon *Smith v. Chrysler Motor Corp.*, No. 89—2898 (E.D. Pa. May 15, 1990), in which the court held that the jury was competent to make a determination of the difference in value of the vehicle in question although no actual repair receipts existed and the vehicle still was not repaired completely. The *Smith* court found that the jury had before it sufficient evidence, including the cost of the vehicle when it was purchased, the number of times plaintiff returned to the dealership for repairs and the performance of the car with respect to its unreliability.

Here, a jury would not be able to determine the diminution in value of plaintiff's vehicle based on the repair receipts alone because the warranty covered the costs of repair and there was no value given to illustrate the costs to repair the vehicle, which also was noted in *Smith*. See *Smith*, slip op. at 6 (stating that "the difficulty [of adding

the cost of seven repairs made to the subject vehicle] is that the repairs were covered by the Chrysler warranty, and thus not actually incurred by plaintiff"). *Smith* is inapplicable because, there, "there was evidence to suggest that the car was never properly repaired by Chrysler" and that "the vehicle remains on plaintiff's property in an apparently inoperable state." Slip op. at 6. In this case, defendant repaired plaintiff's gas gauge on the third attempt and the vehicle was always in an operable state. Again, plaintiff has not provided evidence of damages.

Plaintiff also contends that the circuit court erred by finding that plaintiff was unable to recover incidental and consequential damages without proving actual damages. Plaintiff, however, provided no evidence of incidental and consequential damages, other than testifying that, because of the problems with the fuel gauge, he was unable to drive the vehicle to Florida or New York as planned. Record evidence shows that plaintiff was provided with loaner transportation on some occasions while his vehicle was repaired. Plaintiff's reliance upon *Jones v. Fleetwood Motor Homes*, 127 F. Supp. 2d 958, 966 (N.D. Ill. 2000), in support of his argument is misplaced because, there, the plaintiff was without the subject vehicle for 75 to 150 days during the first year of ownership. Further, *Bartow v. Ford Motor Co.*, 342 Ill. App. 3d 480, 794 N.E.2d 1027 (2003), and *Lara v. Hyundai Motor America*, 331 Ill. App. 3d 53, 770 N.E.2d 721 (2002), cited by plaintiff in support of his contention that he was entitled to incidental and consequential damages, are factually inapposite and inapplicable to the instant case. Because plaintiff failed to provide evidence of incidental and consequential damages, the circuit court properly granted defendant's directed verdict motion.

In addition, plaintiff asserts that he presented sufficient evidence for a jury to determine the existence of a defect in the ML 320, claiming that the circuit court erred by directing a verdict in defendant's favor. The issue of whether the ML 320 is defective, however, is not before this court since it was not the basis oi the circuit court's decision to grant defendant's motion for directed verdict. The circuit court granted defendant's directed verdict motion based upon plaintiff's failure to establish damages. For this same reason, we reject the argument advanced in plaintiff's petition for rehearing that this court's holding in *Pearson v. DaimlerChrysler Corp.*, 349 Ill. App. 3d 688, 695 (2004) ("the limited warranty is breached and/or fails of its essential purpose if successful repairs are not made within a reasonable time or within a reasonable number of attempts") compels a different holding.

As previously noted, plaintiff cannot recover on his breach of warranty claims without establishing damages. *Valenti*, 332 Ill. App. 3d at

462

973. Based on the foregoing, the decision of the circuit court of Cook County to grant defendant's directed verdict motion is affirmed.

Affirmed.

HARTMAN and THEIS, JJ., concur.